UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| CANANDAIGUA WINE CO., | 1:02-CV-06599 OWW DLB |
|---|---|
| Plaintiff, | MEMORANDUM DECISION RE PLAINTIFF'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. PRO. 41(a)(2) (DOC. 88) |
| v. | |
| EDWIN MOLDAUER, | |
| Defendant. | |

## I. INTRODUCTION

Before the court for decision is Plaintiff Canandaigua Wine Company's motion for voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(2).  Doc. 87.  Defendant opposes dismissal.  Doc. 96.

## II. BACKGROUND

It is undisputed that Plaintiff and its parent company, Constellation Brands, are involved in the grape business and produce wine and non-alcoholic grape juice concentrate.  In September 2000, Mr. Moldauer began working as a financial analyst at the Mission Bell Winery owned by Plaintiff.  In connection with his employment at Plaintiff's facility, Plaintiff informed the Immigration and Naturalization Service ("INS") that it was Defendant's employer.  In early 2002, Defendant was terminated

1

for, according to Plaintiff, his "continuing pattern of insubordination." Doc. 88 at 1.

It is undisputed that two months after his dismissal, Mr. Moldauer posted accusations of accounting fraud and retaliatory termination in a series of messages on an electronic "bulletin board" hosted by Yahoo!, Inc., that covers Plaintiff's parent company, Constellation Brands. For example, on December 5, 2002, Mr. Moldauer posted the following message:

> Re: cooking the books???
>
> I hear that their west coast operation is cooking the books according to a former analyst that was fired after questioning certain practices.

*See* Doc. 88 at 2.

In early December 2002, someone anonymously sent Plaintiff's confidential price and customer lists to Plaintiff's principal competitor. Evidence gathered during the course of an investigation by the Madera County Sheriff's Department ("MCSD"), including a video-surveillance tape showing Mr. Moldauer at a Kinko's copy shop in Fresno at the time the price and customer lists were faxed from that shop to Plaintiff's competitors, confirmed that Mr. Moldauer was responsible for the anonymous dissemination. Based on evidence seized from Mr. Moldauer's apartment, and other information gathered by MCSD, a criminal complaint was filed by the Madera County District Attorney's office on December 31, 2002, and a warrant issued for Mr. Moldauer's arrest. However, Mr. Moldauer left the country on December 11, 2002. The criminal complaint remains pending.

On December 19, 2002, Plaintiff filed this lawsuit against Mr. Moldauer, asserting claims for theft and dissemination of

trade secrets, as well as for damages caused by the defamatory internet postings.  Based on Plaintiff's evidentiary showing, a temporary restraining order issued on the same day the lawsuit was filed: (1) prohibiting further dissemination of Plaintiff's confidential business information; (2) directing the United States Marshall to seize Mr. Moldauer's computers; and (3) directing Mr. Moldauer to disclose the details of all trade secret disclosures and to respond to certain specified discovery propounded by Plaintiff.  Doc. 10.

To date, Mr. Moldauer has refused to provide any of the information required by the December 19, 2002 order, nor has he responded any subsequent discovery requests propounded by Plaintiff.  Instead, Mr. Moldauer has invoked the Fifth Amendment.[1]

Although Plaintiff maintains that "Mr. Moldauer's responsibility for the tortious and criminal conduct alleged in the Complaint is beyond serious dispute," Plaintiff believes it is "now obvious that no useful purpose will be served by further prosecution of this lawsuit [because] Mr. Moldauer will continue to ignore plaintiff's rights, this Court's directives, and applicable rules of procedure[]."  Doc. 88 at 4.  Moreover, "papers filed in connection with Mr. Weisberg's recent motion to withdraw confirm that Mr. Moldauer was unwilling and/or unable to

---

[1] Plaintiff correctly points out that adverse inferences may be drawn in a civil case from a person's invocation of the Fifth Amendment. *Baxter v. Palmigiano*, 425 U.S. 308, 318-19 (1976); *Keating v. Office of Thrift,* 45 F.3d 322, 326 (9th Cir. 1995).

pay his legal fees." *Id*.  Plaintiff questions "the odds that plaintiff would ever see a single dime of any judgment entered against Mr. Moldauer in this case." *Id*.

Plaintiff endeavored to obtain a stipulation of dismissal regarding this lawsuit, but not the criminal complaint. Defendant rejected Plaintiff's proposal, stating in a letter:

> I read the contents of FRCP 41 made available to me. The Rule generally requires that a Judge approve a dismissal.  Given the Judge's recent interest in "getting to the bottom" of the dispute, it appears to me that the Judge should be the person who decides upon the fate of this action.
>
> ***
>
> Accordingly, I do not believe that a stipulated dismissal is appropriate ...

Doc. 88, Ex. B.

Defendant does not dispute any of the background facts set forth above.  Instead, he provides an alternative explanation for his termination, asserting that his employment relationship with Plaintiff soured when he reported accounting irregularities in Plaintiff's concentrate business that distort the allocation of costs between wine and concentrate, resulting in over-stated income and/or understated inventory.  Defendant asserts that the Constellation Group then "set Defendant up for dismissal" as follows:

> An inquiry by an internal team from New York found no irregularity.  The Constellation Group claimed a right to terminate Defendant without cause, but delivered a 'Final warning'. Defendant did not violate that final warning, but Plaintiff told the INS that the employment had been terminated.  No company in the Constellation Group gave a final notice of termination.

Doc. 96 at 2.  Defendant further, and somewhat confusingly, recounts a number of other, related facts:

4

>     As his work visa lapsed upon dismissal, Defendant left
>     the United States.  Soon after, the Constellation Group
>     closed its concentrate facility in California, at a
>     cost of up to $50,0000,000 and 52 employment places.
>     The closure corroborates Defendant's position.
>     (Recently the Constellation Group admitted an error in
>     accounting in Australia, relating to inventory.  This
>     'error' resembles the irregularity the Defendant
>     detected.)
>
>     Plaintiff decided to pay a termination bonus to
>     Defendant.  Given Plaintiff's position that (a) it had
>     a right to terminate him without cause, and (b) it had
>     cause to terminate him, the bonus is a mystery.  The
>     bonus was part of a settlement. Plaintiff signed the
>     Agreement, although it was not the employer.  The
>     Agreement focused on potential claims by Defendant
>     under age or such discrimination.  There was no mention
>     of a claim under the Sarbanes-Oxley Act.  The bonus is
>     not a mystery if the aim of the settlement was to
>     stifle any inquiry about the accounting irregularities.
>
>     Subsequently Defendant found out about his rights under
>     the Sarbanes-Oxley Act.  His application through the
>     Department of Labor was opposed by the Constellation
>     Group on limitation grounds.  Subsequently he commenced
>     arbitration with the American Arbitration Association
>     pursuant to the employment Agreement, but the
>     Constellation Group refused to participate in good
>     faith, and involved the Supreme Court of the State of
>     New York, contrary to settled law.  Defendant then
>     commenced litigation in New Zealand under the
>     California tort of dismissal contrary to public policy.
>     Plaintiff protested jurisdiction in the trial court,
>     and then on appeal disavowed its appearance.
>     Plaintiff's claims about his dismissal have never been
>     adjudicated on the merits, because the Constellation
>     Group always invokes procedural defen[s]es.

*Id*. at 2-3.

Defendant also asserts that the procedural history of this case "shows delay by Plaintiff," asserting that:

>     Defendant was kept in the dark about the progress of
>     this action.  Initially Defendant thought this action
>     was related to the deposition that Plaintiff was taking
>     against a friend.  At the time that he was persuaded to
>     authorize Jacob Weisberg Esq. to accept service, he was
>     not aware of the nature of this action.
>
>     The action has drifted.  Mr. Weisberg did not keep
>     [Defendant] properly informed of the status.  There
>     seemed to be regular continuances by agreement between

5

> counsel. Mr. Weisberg raised the Fifth Amendment defense. The effect seemed to be to stall the case. Eventually the court resolved to bring the action for a trial. Defendant was expecting to receive evidence and documents from Plaintiff about the alleged trade secrets, and about the losses that it had incurred. None of this has been provided. In particular, there is no accounting evidence to show the loss of income or profit.
>
> When trial was imminent. Mr. Weisberg sought leave to be excused from the case. Leave was granted. Defendant has had trouble engaging replacement counsel.

Id. at 3-4.

### III.   DISCUSSION

Plaintiff moves for dismissal pursuant to 41(a)(2), arguing that "[t]axpayers here and abroad have already spent staggering sums indulging Mr. Moldauer's appetite for litigation. In a time of scarcity, when so many legitimate and pressing public needs cannot be met, plaintiff cannot fairly ask anything further from this Court, or from taxpayers, to pursue a victory that will only be pyrric." Doc. 88 at 6. Defendant, through his recently-retained attorney, Gregory Thwaite, rejoins that dismissal should not be permitted because Defendant should be afforded an opportunity to respond to Plaintiff's serious allegations. Doc. 96 at 1. Alternatively, if dismissal is allowed, Defendant demands that "conditions should be imposed for costs and for arbitration." *Id*.

Rule 41(a)(2) allows a plaintiff, with the approval of the court, to dismiss an action without prejudice at any time "upon such terms and conditions as the court deems proper...." A motion for voluntary dismissal under Rule 41(a)(2) is addressed to the district court's sound discretion. *Smith v. Lenches*, 263

6

F.3d 972, 975 (9th Cir. 2001); *see also United States v. Berg*, 190 F.R.D. 539, 543 (E.D. Cal. 1999).[2]

A motion for voluntary dismissal should be granted unless the defendant shows it will suffer some plain legal prejudice as a result. *Smith*, 263 F.3d at 975. Plain legal prejudice may be shown where actual legal rights are threatened or where monetary or other burdens appear to be extreme or unreasonable. *Berg*, 190 F.R.D. at 543. Factors to consider in determining legal prejudice are:

> (1) The defendant's effort and expense involved in preparing for trial;
>
> (2) Excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action;
>
> (3) Insufficient explanation of the need to take a dismissal; and
>
> (4) The fact that summary judgment has been filed by the defendant.

*Id*. "Plain legal prejudice does not occur where the defendant merely faces the threat of a second lawsuit or a tactical disadvantage." *Id*. "The suit may be dismissed with or without prejudice, and the dismissal may be conditioned on terms that are

---

[2] As a threshold matter, Defendant cites a number of cases in support of his objection to voluntary dismissal that concern Federal Rule of Civil Procedure 41(a)(1)(A), which provides that a Plaintiff may voluntarily dismiss a lawsuit as a matter of right either before the opposing party serves either an answer or a motion for summary judgment or by stipulation of all parties. These cases, *e.g., Safeguard Business Systems, Inc. v. Hoeffel*, 907 F.3d 861 (8th Cir. 1999); *Progressive Steel Workers Union v. Intern. Harvester Corp.*, 70 F.R.D. 691 (N.D. Ill. 1976), which stand for the proposition that dismissal as a matter of right under Rule 41(a)(1) is not appropriate after the very earliest stages of a litigation, are not relevant to the present motion for dismissal under Rule 41(a)(2).

proper or necessary to avoid prejudice to the defendant. *Id*. The final factor is not relevant here, as Defendant has not moved for summary judgment.

### 1. Defendant's effort and expense involved in preparing for trial.

Defendant asserts that he has incurred expenses in preparing to defend against the libel claim in this case. Defendant does not point to any specific expenses incurred in connection with this case. Rather, he asserts that such expenses should "include[] the proceedings in the Department of Labor, the arbitration, and in New Zealand." Doc. 96 at 6. Defendant filed a complaint under the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, with the Department of Labor ("DOL") on April 24, 2003, alleging that Plaintiff terminated him "in retaliation for his disclosure to management of various accounting irregularities." Doc. 98, Ex. K. DOL denied his claim as untimely, *id*., which denial was affirmed by an Administrative Law Judge ("ALJ"), *id*. at Ex. L, and the Administrative Review Board, *id*. at Ex. M.

On June 26, 2008, Defendant filed a second complaint with DOL, alleging, among other things, that Plaintiff's election to proceed to trial in this federal civil litigation violated the Sarbanes-Oxley Act. *Id*. at Ex. N. An ALJ issued an order to show cause why this second complaint should not be dismissed on the grounds that (1) it was untimely filed and (2) that it fails to state a claim upon which relief can be granted under the Sarbanes-Oxley Act. *Id.* at Ex. O. After being granted an extension in response to Mr. Moldauer's request for a stay, *id*.

8

at Ex. P, Mr. Moldauer filed no response, *id*. at Q.  The ALJ dismissed the second Complaint on the grounds that the new claims could be "traced to the allegations [] made six years earlier." *Id*. at 4.  Defendant's appeal was denied by the Administrative Review Board.  *Id*. at Ex. R.[3]

Defendant also commenced arbitration with the American Arbitration Association "pursuant to the employment Agreement," but the Constellation Group obtained an order from the Supreme Court of the State of New York staying arbitration.  *Id*. at Ex. W.  Among other grounds, the New York court cited the fact that Defendant "waived any right to arbitrate."  *Id*.

As to the New Zealand action, which raised the California tort of dismissal contrary to public policy, after a number of preliminary hearings, the matter was dismissed for lack of jurisdiction.  *Id*. at Exs. Z - CC.  Appeals before the High Court of New Zealand was likewise dismissed.  *Id*. at Exs. DD - EE.

Plaintiff cannot be held responsible for Defendant's numerous unsuccessful attempts to pursue relief in other fora. Defendant filed no counterclaims in <u>this</u> action, nor does it appear that he has responded to discovery in any meaningful way, nor has he prepared the case for trial.  The court has been endeavoring to conduct the trial of this case.  The parties have resisted the court's efforts by repeated requests for continuances.  Any costs incurred by Defendant outside the confines of this litigation cannot reasonably be considered

---

[3] On March 5, 2009, Defendant filed a notice with the Administrative Review Board of his intent to file a Sarbanes-Oxley claim in federal court.  Doc. 98 at Ex. S.

9

"prejudice" in this case.

> 2. **<u>Has there been excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action</u>?**

Defendant suggests that Plaintiff has engaged in delay and lack of diligence over the six years since the Complaint in this case was filed, but fails to point to any specific conduct to support his assertion.  To the contrary, the extensive delay in this case has been authorized by a series of stipulations, entered into between Plaintiff and Defendant's former counsel, Jacob M. Weisberg.[4]  *See, e.g.*, Docs. 21, 25, 26, 28, 29, 30, 31, 32, 37, 39, 48.  Since as early as May 2006, the parties sought a continued stay of this litigation while the New Zealand litigation progressed, despite the court's urging that this case should be tried.  Docs. 40, 42 & 45 (joint status reports).  In light of these stipulations, it is not appropriate to ascribe "fault" for the slow pace of this litigation to the Plaintiff.  It has been entirely mutual.

> 3. **<u>Explanation of the need for dismissal</u>.**

Defendant also maintains that Plaintiff has provided an "insufficient explanation of the need to take dismissal at this

---

[4] Mr. Weisberg's motion to withdraw was granted on January 14, 2009, Doc. 69, on the ground that "communication [had] broken down between Weisberg and Moldauer as to case strategy and non-payment of attorney's fees. *Id*. at 1.  Mr. Moldauer disparages the services Mr. Weisberg rendered in this case, Doc. 96 at 4, but this is not the proper forum to obtain relief against Mr. Weisberg for any performance issues.

point." Doc. 96 at 7. But, Plaintiff has articulated its rationale, namely that, in light of Mr. Moldauer's litigious behavior and his seeming unwillingness to pay his former counsel's legal fees, Plaintiff is simply not interested in pursuing relief that will likely lead to yet more litigation without any hope of collecting any financial judgment against Mr. Moldauer. This is a legitimate concern that remains, in substance, unchallenged by Defendant.

### 4. Other possible sources of prejudice.

Defendant objects that dismissal would deprive him of the opportunity to assert a defense that would "vindicate his claims about accounting irregularities...." Doc. 96 at 7. He cites *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924 (7th Cir. 2007)., which concerned plaintiffs who, faced with a meritorious motion for judgment on the pleading based on statute of limitations grounds, sought voluntary dismissal under Rule 41(a)(2) so that they could bring their case in a different jurisdiction with a longer statute of limitations. *Id*. at 925-26. The Seventh Circuit held that dismissal without prejudice under such circumstances would result in "plain legal prejudice" to defendants, who "acquired a right to assert the statute of limitations bar by operation of Wisconsin law." *Id*. at 927-28. "Wisconsin law conferred on [defendant] a vested right ... that would have been rendered useless if voluntary dismissal without prejudice was granted." *Id*. at 927. Here, in contrast, Plaintiff has pointed to no "vested right" under any body of law that would be "rendered useless" by voluntary dismissal in this

11

case. Moreover, unlike in *Wojtas*, Plaintiff does not indicate any intent to re-file this lawsuit in another forum.

Defendant also cites *Hamm v. Rhone-Poulenc Rorer Pharmaceuticals, Inc.*, 187 F.3d 941 (8th Cir. 1999), which affirmed a district court's denial of a motion for voluntary dismissal where a magistrate judge had already issued a recommendation that certain claims be dismissed for failure to state a claim. Under such circumstances, granting plaintiff's motion for voluntary dismissal "would waste the substantial efforts expended by the magistrate judge and the district court and would prejudice defendants by depriving them of a valid defense." *Id*. at 951. Here, unlike in *Hamm*, the district court has not been briefed on or otherwise heard the merits of any of Defendant's "defenses."

Finally, Defendant argues that voluntary dismissal would be a "strategic advantage to Plaintiff, to the extent that Plaintiff is immunized from any litigation in the future." Doc. 96 at 7. It is not clear how any dismissal in this action would "immunize" Plaintiff in any way from future litigation.

In sum, Plaintiff has offered a sufficient explanation for the need to dismiss this action; Plaintiff has not unduly delayed prosecution of its claims, nor demonstrated a lack of diligence; and Defendant has incurred minimal expense and expended essentially no effort preparing for trial in <u>this</u> matter. Moreover, Defendant has ignored the preliminary injunction and prior orders of the court. This conduct is disabling, as it shows defendant will only act when he believes it is in his own interest to do so. Plaintiff's motion for voluntary dismissal

pursuant to Federal Rule of Civil Procedure 41(a)(2) is GRANTED.

### B. Requested Terms/ Conditions of Dismissal.

#### 1. Plaintiff's Requests.

Plaintiff expresses concern that "Mr. Moldauer will attempt to mischaracterize the implications of, or reasons for, dismissal of this case in other proceedings." *Id*. at 7. For example, on April 23, 2008, Plaintiff and Mr. Moldauer's former attorney, Jacob Weisberg, entered into a stipulation setting this matter for trial. *See id.* at Ex. C & D. Despite entering into this stipulation, Mr. Moldauer later asserted that the setting of a trial date constituted actionable "harassment," advancing this theory as grounds for a Sarbanes-Oxley Act claim filed with the Department of Labor in June 2008. *Id*. at Ex. E. In fact, this evidences Defendant's willingness to delay the case for strategic advantage.

On February 10, 2009, in a "Notice of Representation" to this court, Mr. Moldauer asserted that Plaintiff's counsel, Mr. Zeiff, had inappropriately contacted him directly in 2003:

> No doubt, Mr. Zeiff will not object to bringing his arguments in front of me as the opposing party; as he already did so by having a 'chit-chat' directly with me (!) in 2003. I still do not understand why, and then Mr. Weisberg, my attorney on record at the time, allowed this to happen. Mr. Zeiff may have a better explanation.

*Id*. at Ex. F (emphasis in original) There appears to be no basis in fact for Mr. Moldauer's objection to this contact, as Mr. Zeiff has presented documents demonstrating that Mr. Zeiff contacted Mr. Moldauer at his express request to address matters relating to Mr. Moldauer's first Sarbanes-Oxley Claim after

13

having been advised, both by Defendant and Mr. Weisberg, that Mr. Weisberg had no role in that proceeding. *See id.* Ex. G.

Plaintiff calls attention to these matters here "not to show that Mr. Moldauer should be sanctioned for deliberately misleading the Court," but rather to "illustrate ... the modus operandi that Mr. Moldauer has embraced for the last six years in each of the many legal proceedings he has brought against plaintiff and plaintiff's parent company." *Id.* at 8 n. 6. Accordingly, Plaintiff requests that the order of dismissal in this case contain certain statements aimed at constraining Mr. Moldauer's ability to mischaracterize the implications of dismissal. *See* Doc. 92.

However valid Plaintiffs' concerns may be, it is not necessary or appropriate for the district court to issue findings of this nature. The merits of this case have not been heard.

### 2. Defendant's Requests.

Defendant first requests that the case be dismissed **with prejudice**, arguing that "[s]uch dismissal will recognize the long period of the litigation, the staleness of the claims going back to 2002, and the likelihood that refiling of the claims would be barred by a limitations period or laches." Doc. 96 at 8. This invitation is declined, in large part because Defendant seems eager and willing to pursue claims against Plaintiff in other fora. Dismissal with prejudice in this action would preclude Plaintiff from raising the instant claims as counterclaims to any such action, which would unfairly prejudice Plaintiff.

Second, Defendant requests that Plaintiff be required to pay

14

defendant's costs and attorney's fees.  There is authority to support such a condition, where failure to do so could prejudice the defendant.  *See e.g., Belle-Midwest Inc., v. Missouri Property & Cas. Ins. Guar. Assoc.*, 56 F.3d 977, 978 (8th Cir. 1995).  Here, however, Defendant has failed to establish the nature of any costs or fees he incurred in connection with <u>this</u> lawsuit, let alone that any such expenses were excessive or caused him prejudice.  He is also in violation of existing court orders in this case.

Defendant specifically seeks an order to "prevent an award of costs against him in New Zealand," and suggests that this court has the power to condition dismissal on Plaintiff's stipulation that it will not seek fees in New Zealand, citing, among other cases, *Templeton v. Ned Lloyd Lines*, 901 F.2d 1273 (5th Cir. 1990) (imposing condition that plaintiff stipulate not to oppose discovery in pending state court action).  Even if these cases could be read to empower the district court to impose such a condition, Defendant has not established that doing so would be just, nor does a U.S. Court have authority to decide any issue before the courts of New Zealand.

Finally, Defendant requests that Plaintiff be ordered to arbitration.  Defendant provides no legal support for such a requirement, particularly in light of the fact that the Supreme Court of New York has already adjudicated the arbitration issue in Plaintiff's favor.  *See* Doc. 98, Ex. W.

*///*
*///*
*///*

15

## IV. CONCLUSION

For the reasons set forth above, this case is dismissed WITHOUT PREJUDICE pursuant to Federal Rule of Civil Procedure 41(a)(2) on the request of Plaintiff.  Fees and costs are to be borne by the respective parties.

IT IS SO ORDERED.

Dated:   **June 2, 2009**                           /s/ Oliver W. Wanger
                                          **UNITED STATES DISTRICT JUDGE**